We'll hear argument next in the case of United States v. Vivirito. Ms. Killian Good morning, your honors. May it please the court. My name is Kelsey Killian. I represent the appellant Thomas Vivirito. Mr. Vivirito pleaded guilty to one count of receipt of child pornography in violation of 18 U.S.C. 2252 A.A.2.A. pursuant to a written plea agreement. Also contained in that plea agreement was a certain stipulated conduct. Here the record is clear that at sentencing the district court erred in calculating Mr. Vivirito's sentencing guidelines. Is error the standard of appellate review? Here the standard is de novo review. Why do you think that we are making an independent decision? I'm sorry, your honor. I don't believe I understand your question. Why do you think the court of appeals makes an independent decision rather than asking whether the district court committed clear error? Because this is a legal question, your honor. Why is this a legal question rather than a characterization of events? It's a legal question because it involves the district court's interpretation of the sentencing guidelines. Therefore, the district court's interpretation. And then it has to be applied to particular events. You may be aware that the Supreme Court has said that when the legal standard is being applied to particular events, if the dispute is case specific, appellate review is deferential. And you seem to be urging us to take some different approach. The approach that we urge this court to take is a de novo approach where you can both look at the set of facts here and the law as applied essentially with a new set of eyes. Well, that's the definition of de novo review, but I think what Judge Easterhook is getting at is that with the exception of certain constitutional issues where the Supreme Court has said national uniformity is important, this kind of application, you know, here's a video. It depicts certain conduct. Here is something in the guidelines that talks about sadistic or masochistic conduct or other depictions of violence. And how do they match up? The next case is going to be a different video or might be different conduct. And so it's the application of words that, as far as I know, we all have a rough understanding of, sadistic, masochistic, violence. And we're trying to apply them. And that's the sort of thing, again, with the exception of a few constitutional issues, appellate review is deferential. In this case, it is undisputed that the controlling case is United States v. Johnson. This was discussed below at sentencing before the- Right. And you both have a different view of where Johnson takes you in this case, all having to do, I think, with a reasonable characterization of the conduct in this video, taking into account the age of the child, taking into account, you know, her sophistication, taking into account what one might objectively predict this kind of activity would lead to. And the district court looks at all of this and thinks that it crosses the line into at least some kind of depiction of violence. Also, I suppose part of the factual background is some evidence, although correct me if I'm wrong, but I thought he was engaged in some sort of threatening behavior, verbally, you know, coercive kind of behavior too, which can also inform one's understanding of the video. Certainly. And Your Honor is right. There was threatening communication. However, it was not contemporaneous with the videos that were- Right. But she probably remembered. Yes, Your Honor. Is it your argument that the court shouldn't consider those threatening texts in determining the objectiveness of this under Johnson? No. It's our position that those threatening communications should not be considered. However, even if they are considered, they still do not fall under the objective standard that this court instructed district courts use in Johnson. Johnson had similar threatening communications that it considered. Correct, but in the- So why can't we consider it? That's exactly what Johnson did. In Johnson, I believe there is a minor but very important significant distinction. In Johnson, the victim there said that she would feel embarrassed, I believe. That may not be a precise quote, but did not want to use the highlighter or the screwdriver or the instruments used that the defendant asked, that instructed the victim to use. So I believe her response, saying that that would make her uncomfortable or she did not like that, informed the idea or, excuse me, the court's adoption of the definition of sadistic, which would be that it would be unpleasant, embarrassing for the individual here, the victim. So is it your position that something can be sadistic only if it leads to actual physical harm or injury or could it be sadistic because of the psychological consequences? I believe that here the question is, well, I guess to answer that question, multiple parts. One, I don't have a position on that in this case because those facts simply aren't here. Here we have, excuse me, here it is just the analysis of the actual material, the image per Johnson. That is, whether the image itself would objectively be considered sadistic. And I understand that your question is, is there a psychological component or an emotional component to sadistic? I mean, frankly, it seems to me there well could be to put somebody in a deeply humiliating situation just for the fun of watching them be humiliated. Sounds sadistic to me, but maybe that's not the definition, but I'm just asking. My response to that would be that it is, that would then take us into an inquiry of what the victim subjectively experienced. It might, but hypothetical, not this case. But suppose the video not only showed what it does show, but also cuts to her face now and then and you can see she's crying. She's got a pained expression on her face. That's just the way she looks, but we can all draw an inference from that, couldn't we? I believe in that hypothetical example, yes, we could draw that inference. However, those aren't the facts that are presented with this case. And based on the facts of this case, what we're looking at under this objective standard espoused or instructed in Johnson is the actual image. And here the image is simply of the victim inserting the tool into her hairbrush. Yes. Yes, Your Honor. Okay. Thank you. And with that, I will reserve the remaining time for rebuttal. Certainly, Counsel. Ms. Pearson. Good morning, Your Honors. May it please the Court, Counsel. My name is Ellie Pearson, and I am here on behalf of the United States. The district court correctly applied the four-level sadomasochistic enhancement in this case after viewing the video depicting a 12-year-old girl inserting a sizable hairbrush handle into her anus and vagina and finding that is objectively sadistic. As a threshold matter, the court's standard of review is deferential to the district court's finding, specifically that the size of the child, the size of the object, the age of the child, taking that view in the totality of the circumstances of the video, the court found that it was objectively sadistic. Did the court nail this down to whether it was sadism or masochism or just other violence? The district court did not specify if it was one or the other, and I think any of those would qualify for the enhancement. The court's specific finding was that the nature of this conduct could have caused the child to permanently hurt herself. Those are the district court's findings on Government Act 18. And so that permanency of the nature of that conduct was likely violent, likely fits into that category of violence. But I think that I want to also correct the record because defendant argues that there were no contemporaneous messages along with this video. First of all, we disagree that narrowly viewing this video on its own, just the four corners of the video, and not considering the context by which the video was created is outside the scope of the objective analysis. That would be inconsistent with Johnson, wouldn't it? It would, and Johnson found compelling that the defendant coerced and manipulated this child, and the child would not have conceived of creating this video had those messages not been, had they not preceded the creation of the video. But apart and aside from the messages that preceded the day before in this case, within the context of the video itself, the defendant gives feedback to the victim at the very end in which he characterizes the video, and he says specifically that the child is able to take it. He says, uses the word to take, which means to obtain something by some level of force, and he commends her for that. And he does so expressing his pleasure, which is the very definition of sadism. She is able to tolerate this pain, this humiliation, this discomfort for his pleasure, and that is, for lack of a better analogy, the CNN banner that he attaches to the nature of this video that gives the viewer, the objective viewer, the context and the lens by which to analyze it. So under that deferential standard, the court should not disturb the district court's findings unless there is a definite and firm conviction in this court's mind that a mistake has been made. And under Johnson and the other cases that we cited from the sister circuits that are persuasive to the court, comparing the foreign object here that was used and the court's analysis that this object was potentially larger than both the toothbrush in the 11th circuit and the hairbrush in the 5th circuit, as well as the screwdriver in the Johnson case that was used, this court should uphold the district court's findings. With regard to the harmless error analysis, I just want to briefly touch on that. Even if the court erred in applying the four-level enhancement, the record is clear that the district court anchored its sentencing decision on the harm that was caused to the victim. How do we know that here, where the court's comment that it wouldn't impose a sentence lower than the 216 months wasn't tied to the disputed guidelines? It's one thing to say, even if I got the guideline calculation wrong, I would still impose a sentence of 216 months. That's not what the court did here. The court said it wouldn't go lower than the 216 months, but again, no reference to or grounding in the guidelines. That's correct, Your Honor. Which seems outside of our case law for harmless error in this area. I think that because the court spent so much time and repeatedly, I counted at least six different references where the court, in imposing sentence, focused on the serious and egregious nature of the offense, the degrading and abusive behavior of the defendant, the horrific effects on 15 vulnerable victims, and that the sentence that the defendant had requested would not promote respect for the law or meet the needs of general deterrence, the court specifically said, I cannot take into account anything lower than 216 months in light of the number of minors who have been victimized in this case. And that factor is separate and apart from the sentencing enhancement. So because the court repeatedly rooted its sentencing decision in those 3553A factors. But that seems beyond our harmless error case law, that we'd have to take it a little bit further. I haven't found any cases where we have found a harmless error where it hasn't somehow been grounded in or some acknowledgement of the guidelines. And I agree with you, Your Honor. There is no explicit reference here that the guidelines aside, the sentence would have been the same. But I think that based on what would have been the guidelines, had the enhancement not been applied, that range would have been so insignificantly different. And the court sentence was still 20 or 24 months, depending on the application of the guideline, lower than that, that it is unlikely that the district court sentence would have changed at all if this guideline was not applicable, which we believe, obviously, that it should have been. And then I just wanted to address Your Honor's question about emotional harm. And I think the court's precedent in Turchin directly addresses that. That's the case where the child was being urinated on. And that case is also important here because it also stands for the premise that alternative interpretations of the same video are insufficient to disturb the district court's finding, as long as there is enough facts in the record. And we'd ask the court to affirm based on that. Thank you. Thank you, Ms. Pearson. Anything further, Ms. Killian? Yes, Your Honors. Briefly, with regard to counsel's mention of Turchin, I just wanted to note that Turchin stands for the proposition that violence is not a prerequisite for an enhancement to apply. That is essentially it in a nutshell. So to the extent that it is applicable here, it is applicable for that same very proposition that violence is not a prerequisite. With regard to the harmless error, our position is that the error is not harmless. In the sentencing transcript, the court notes first that the court is going to start at determining the guideline range as it should. The court notes, as I mentioned, the guideline range is 360 to life, but that is not what you are capped at. You are capped at 240. The court proceeds to say that, so we are looking at 240, and we keep going down and down, dot, dot, dot, to five years. The court is commenting on the fact that there was a minimum for Mr. Viverito. It is just our position that the court begins at 240 months. Any credit that the court might have or did afford Mr. Viverito for his health issues or his considerable cooperation with the government were then deducted from that 240, therefore arriving at the 216. Thank you, Ms. Killian. Thank you. The case is taken under advisement.